# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GASTELUM, | Case No. 1:22-cv-01194-JLT-SAB |
| Plaintiff, | ORDER REQUIRING PLAINTIFF TO SHOW CAUSE RE SUPPLEMENTAL JURISDICTION |
| v. | |
| COTTON ON USA, INC., | **DEADLINE: TWENTY-ONE DAYS** |
| Defendant. | |

On September 21, 2022, Plaintiff Fernando Gastelum, proceeding *pro se*, filed a Complaint against Defendant Cotton On USA, Inc. (ECF No. 1.) The Complaint asserts claims under: (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*; (2) the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51–53; and (3) the California Disabled Persons Act, Cal. Civ. Code §§ 54–54.3. (Id.) Plaintiff is seeking both injunctive relief and monetary damages. On December 19, 2022, Defendant filed an answer. (ECF No. 6.)

Based upon the recent Ninth Circuit opinion in Vo v. Choi, the Court shall require Plaintiff to show cause why the Court should not decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim. See 28 U.S.C. § 1367(c); Vo v. Choi, 49 F.4th 1167 (9th Cir. 2022) (holding the district court properly declined to exercise supplemental jurisdiction in a joint Unruh Act and ADA case).

1    In an action over which a district court possesses original jurisdiction, that court "shall
2  have supplemental jurisdiction over all other claims that are so related to claims in the action
3  within such original jurisdiction that they form part of the same case or controversy under Article
4  III of the United States Constitution."  28 U.S.C. § 1367(a).  Even if supplemental jurisdiction
5  exists, however, district courts have discretion to decline to exercise supplemental jurisdiction.
6  28 U.S.C. § 1367(c).  Such discretion may be exercised "[d]epending on a host of factors"
7  including "the circumstances of the particular case, the nature of the state law claims, the
8  character of the governing state law, and the relationship between the state and federal claims."
9  See, e.g., City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997).

10    Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of
11 actual and treble damages, at a statutory minimum of at least $4,000.00 per violation.  Cal. Civ.
12 Code § 52(a); Molski v. M.J. Cable, Inc., 481 F.3d 724, 731 (9th Cir. 2007).  After passage of the
13 ADA in 1990, the Unruh Civil Rights Act and California Disabled Persons Act were amended to
14 provide that a violation of the ADA constitutes a violation of the Unruh Civil Rights Act.  Pickern
15 v. Best W. Timber Cove Lodge Marina Resort, 194 F. Supp. 2d 1128, 1131 (E.D. Cal. 2002); Cal.
16 Civ. Code § 54.1(d) ("A violation of the right of an individual under the Americans with
17 Disabilities Act of 1990 . . . also constitutes a violation of this section."); Rodriguez v. Barrita,
18 Inc., 10 F. Supp. 3d 1062, 1074 (N.D. Cal. 2014) (stating same as to California Disabled Persons
19 Act).

20    More recently, California, in response to the resulting substantial volume of claims
21 asserted under the Unruh Act and the concern that high-frequency litigants may be using the
22 statute to obtain monetary relief for themselves without accompanying adjustments to locations
23 to assure accessibility to others, enacted filing restrictions designed to address that concern.  See
24 Arroyo v. Rosas, 19 F.4th 1202, 1211–12 (9th Cir. 2021).  These heightened pleading
25 requirements apply to actions alleging a "[c]onstruction-related accessibility claim," which
26 California law defines as "any civil claim in a civil action with respect to a place of public
27 accommodation, including but not limited to, a claim brought under Section 51, 54, 54.1, or 55,
28 based wholly or in part on an alleged violation of any construction-related accessibility

1   standard." Cal. Civ. Code § 55.52(a)(1).

2   Moreover, California imposes additional limitations on "high-frequency litigants,"
3   defined as: "A plaintiff who has filed 10 or more complaints alleging a construction-related
4   accessibility violation within the 12-month period immediately preceding the filing of the current
5   complaint alleging a construction-related accessibility violation." Cal. Civ. Proc. Code §
6   425.55(b)(1). The definition of "high-frequency litigant" also extends to attorneys. See Cal.
7   Civ. Proc. Code § 425.55(b)(2). "High-frequency litigants" are subject to a special filing fee and
8   further heightened pleading requirements. See Cal. Gov. Code § 70616.5; Cal. Civ. Proc. Code §
9   425.50(a)(4)(A). By enacting restrictions on the filing of construction-related accessibility
10  claims, California has expressed a desire to limit the financial burdens California's businesses
11  may face for claims for statutory damages under the Unruh Act. See Arroyo v. Rosas, 19 F.4th
12  at 1206-07, 1212.

13  The Ninth Circuit has also expressed "concerns about comity and fairness" by permitting
14  plaintiffs to circumvent "California's procedural requirements." Vo v. Choi, 49 F.4th at 1171.
15  Plaintiffs who file these actions in federal court evade these limits and pursue state law damages
16  in a manner inconsistent with the state law's requirements, as the Ninth Circuit has observed:

> As the district court recognized, the recent confluence of several California-law rules have combined to create a highly unusual systemic impact on ADA-based Unruh Act cases that clearly threatens to have a significant adverse impact on federal-state comity. Congress crafted the ADA so that the only remedy available in private suits is prospective injunctive relief, and damages are only available in suits that the Government elects to bring. *See supra* at 1205–06 & 1206 n.1. As it is entitled to do, California chose a different route—it created, in the Unruh Act, a state law cause of action that relies dispositively on the ADA's substantive rules but that expands the remedies available in a private action. Not only are "actual damages" available, but also an additional award of up to treble damages, and the total monetary award may not be less than $4,000 per occasion. *See* CAL. CIV. CODE § 52(a); *id.* § 55.56(a), (f). In response to the resulting substantial volume of claims asserted under the Unruh Act, and the concern that high-frequency litigants may be using the statute to obtain monetary relief for themselves without accompanying adjustments to locations to assure accessibility to others, California chose not to reform the underlying cause of action but instead to impose filing restrictions designed to address that concern. Because these procedural restrictions apparently have not been applied in federal court, *see supra* at 1207–08, the consequence of

>these various laws, taken together, was to make it very unattractive to file such Unruh Act suits in state court but very attractive to file them in federal court. Given that the Unruh Act borrows the ADA's substantive standards as the predicate for its cause of action, a federal forum is readily available simply by pairing the Unruh Act claim with a companion ADA claim for injunctive relief. *See* 28 U.S.C. § 1331. As the statistics cited by the district court demonstrate,[5] the apparent result has been a wholesale shifting of Unruh Act/ADA cases into the U.S. District Court for the Central District of California (and perhaps the other California federal courts as well).

Arroyo v. Rojas, 19 F.4th at 1211–12.[1] The Court notes the growing trend amongst California district courts to consider the state procedural requirements in ADA cases (similar to the instant matter) as a basis for declining to exert supplemental jurisdiction over the plaintiff's Unruh and other state law claims. See, e.g., Brooke v. Tides Hosp. LLC, No. 8:21-cv-00755-JLS-JDE (C.D. Cal. Jun. 4, 2021) (order to show cause why the court should not decline to exercise supplemental jurisdiction over plaintiff's Unruh Act claim); Marquez v. KBMS Hosp. Corp., 492 F. Supp. 3d 1058, 1062 (C.D. Cal. 2020) ("The Court finds that this case presents 'exceptional circumstances' and that 'there are compelling reasons' for declining to exercise jurisdiction over Plaintiff's Unruh Act claim . . . Most significantly, California has established a detailed statutory scheme regarding construction-related accessibility complaints for damages, and it deserves the opportunity to enforce that scheme."); Dalfio v. Simco-Robinson, LLC, No. 21-CV-647-MMA (DEB), 2021 WL 5178525, at *4 (S.D. Cal. Nov. 8, 2021) (granting motion to dismiss and declining to exercise jurisdiction over Unruh Act Claim). According to the filings with this Court, Plaintiff appears to be a high-frequency litigant.[2]

---

[1] The Court notes that in consideration of judicial economy, convenience, fairness to litigants, and comity, the Ninth Circuit in Arroyo found that because a motion for summary judgment was already adjudicated and the court had ruled in favor of the plaintiff on the ADA claim, "[f]rom the perspective of judicial economy and convenience, it makes no sense to decline jurisdiction, as the district court did, over a pendent state law claim that that court has effectively already decided." 19 F.4th at 1214.

[2] This appears to be one of more than sixteen cases Plaintiff has initiated, in the Eastern District in 2022. See, e.g., Gastelum v. Veer Hosp. LLC, No. 1:22-cv-00112-DAD-BAK; Gastelum v. Easiness LP, No. 1:22-cv-00166-DAD-BAK; Gastelum v. Tilly's, Inc., No. 1:22-cv-00178-ADA-CDB; Gastelum v. Penney OpCo, LLC, No. 1:22-cv-00179-AWI-EPG; Gastelum v. Tractor Supply Co., No. 1:22-cv-00209-JLT-SAB; Gastelum v. Petco Animal Supplies Stores, Inc., No. 1:22-cv-00792-BAM; Gastelum v. Five Below, Inc., 1:22-cv-00825-AWI-SAB; Gastelum v. Bed Bath & Beyond, Inc., No. 1:22-cv-01173-ADA-CDB; Gastelum v. Shop Q, Inc., 1:22-cv-01176-EPG; Gastelum v. Macy's Inc., No. 2:22-cv-00065-KJM-DB; Gastelum v. Penney OpCo, LLC, No. 2:22-cv-00283-KJM-AC; Gastelum v. Arbor Lodging Partners, LLC, 2:22-cv-01689-TLN-KJN.

As a final note, based on the parties' filings, it is unclear whether both parties have consented to Magistrate Judge jurisdiction.  To consent or decline to magistrate judge jurisdiction, a party may sign and file the consent form available on the Court's website, at: hhttp://www.caed.uscourts.gov/caednew/index.cfm/forms/civil/.  Parties may consent, decline or withhold consent without any adverse consequences.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff show cause, in writing, **no later than twenty-one days of entry of this order**, as to why the Court should not decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim and California Disabled Persons Act claim;

2. Within such response, Plaintiff shall identify the amount of statutory damages Plaintiff seeks to recover, and provide a declaration or declarations, signed under penalty of perjury, providing all facts necessary for the Court to determine if Plaintiff is a "high-frequency litigant";

3. **Within fourteen days of the service** of Plaintiff's filing in response to this order, Defendant may file a response to Plaintiff's filing;

4. Failure to respond may result in a recommendation to dismiss the entire action without prejudice, Fed. R. Civ. P. 41(b) (stating that dismissal is warranted "[i]f the plaintiff fails to … comply with … a court order"); Hells Canyon Pres. Council v. U.S. Forest Serv., 403 F.3d 683, 689 (9th Cir. 2005); Local Rue 110;

5. Further, an inadequate response will result in the Court recommending that supplemental jurisdiction over Plaintiff's Unruh Act claim be declined and that the Unruh claim be dismissed pursuant to 28 U.S.C. § 1367(c); and

/ / /

/ / /

/ / /

/ / /

/ / /

6. The parties are directed to file consent or declination of consent forms if they wish to signify their intent to consent to Magistrate Judge jurisdiction.

IT IS SO ORDERED.

Dated: __**February 1, 2023**__

UNITED STATES MAGISTRATE JUDGE