1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GASTELUM, | Case No. 1:22-cv-01194-SAB |
| Plaintiff, | ORDER DISCHARGING ORDER TO SHOW CAUSE, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING STATE LAW CLAIMS |
| v. | |
| COTTON ON USA, INC., | ORDER TO FILE JOINT SCHEDULING REPORT |
| Defendant. | |
| | **DEADLINE: MAY 1, 2023** |
| | (ECF Nos. 11, 13, 14) |

On February 1, 2023, the Court issued an order requiring Fernando Gastelum ("Plaintiff") to show cause as to why the Court should not decline to exercise supplemental jurisdiction over his State law claims.[1]  (ECF No. 11.)  Presently before the Court are the parties' responses to its order to show cause.  Having considered the briefs submitted by the parties, as well as the Court's file, the Court finds this matter suitable for decision without oral argument.  See Local Rule 230(g).  For the reasons set forth herein, the Court declines to exercises supplemental jurisdiction over Plaintiff's State law claims and those claims shall be dismissed.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 12, 15, 16.)

1

# I.

# BACKGROUND

Plaintiff is proceeding *pro se*[2] in this accessibility litigation against Defendant Cotton On USA, Inc. ("Defendant"). (Compl., ECF No. 1.)

Plaintiff alleges he is a senior citizen and is missing a leg; sometimes he uses a wheelchair for mobility, whereas at other times, he uses a prosthetic leg and a cane. (Id. at ¶¶ 1, 3–4.) Plaintiff lives in Casa Grande, Arizona, but he visits "the geographical area where the Stores are located [*i.e.*, California] on a regular basis, two to four times per year," for unspecified reasons. (Id. at ¶¶ 2, 20.) Plaintiff alleges he visited two of Defendant's clothing stores—one located in Fresno, California, and the other located in Bakersfield, California (id. at ¶¶ 5, 10, 14)—and discovered both stores violated the accessibility standards,[3] thus "den[ying] Plaintiff full and equal access" under federal and California state law. (Id. at ¶¶ 11–12, 15–16, 25, 26, 29, 32.)

The complaint asserts claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51–53, and California's Disabled Persons Act ("DPA"), Cal. Civ. Code §§ 54–54.3. (ECF No. 1 at 1, 3–6.) Plaintiff seeks declaratory and injunctive relief under the ADA; he also seeks declaratory and injunctive relief under the Unruh Act and DPA—plus actual damages, statutory damages and treble damages under the Unruh Act, and $1,000.00 per violation under the DPA, costs and expenses, and "lawyer's fees should Plaintiff hire a lawyer." (Id. at ¶¶ 26, 30, 36.)

On December 19, 2022, Defendant filed an answer to the complaint. (ECF No. 6.) On February 1, 2023, the Court issued the instant order to show cause. (ECF No. 11.) Plaintiff filed a response to the Court's order to show cause on February 6, 2023 (ECF No. 13), and Defendant filed a response to Plaintiff's filing on February 17, 2023 (ECF No. 14). The matter is now fully briefed.

---

[2] The Court notes Plaintiff paid the filing fee for this action on September 21, 2022.

[3] Plaintiff alleges the Fresno store failed to have accessible routes 36" in width between displays of merchandise and that his access to the fitting rooms was obstructed by clothing racks that were stationed there; he alleges the Bakersfield store failed to have accessible routes 36" in width between displays of merchandise and a 36" long lowered section service counter free of merchandise. (ECF No. 1 at ¶¶ 11, 15.)

## II.

## LEGAL STANDARD

Federal courts have supplemental jurisdiction over state law claims that are so related to claims over which the court has original jurisdiction that they form the same case or controversy under Article III of the U.S. Constitution. 28 U.S.C. § 1367(a); see also United Mine Workers of Am. v. Gibbs (Gibbs), 383 U.S. 715, 725 (1966); Kuba v. 1–A Agr. Ass'n, 387 F.3d 850, 855 (9th Cir. 2004). Even if supplemental jurisdiction exists, however, district courts have discretion to decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c); see Gibbs, 383 U.S. at 726 (supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right."). "The propriety of exercising supplemental jurisdiction can be raised by the parties or *sua sponte* by the courts," Carne v. Stanislaus Cnty. Animal Servs. Agency, 445 F. Supp. 3d 772, 774–75 (E.D. Cal. 2020), so long as the district court provides reasoning "for the decision to decline to exercise supplemental jurisdiction," Acri v. Varian Assoc., Inc., 114 F.3d 999, 1001, n.3 (9th Cir. 1997). Thus, even where a plaintiff establishes standing sufficient to make the court's exercise of jurisdiction over federal claims appropriate, the court retains discretion over whether to exercise supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a).

Section 1367 provides a district court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. §§ 1367(c)(1)–(4). The Supreme Court has explained that, in determining whether to decline jurisdiction pursuant to § 1367(c), courts must consider whether the exercise of jurisdiction would promote judicial economy, convenience and fairness to litigants, and comity. See Gibbs, 383 U.S. at 726; City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172–73 (1997) (noting discretion may be exercised "[d]epending on a host of factors" including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims."); see also Brady

v. Brown, 51 F.3d 810, 816 (9th Cir. 1995). The Supreme Court stressed that comity and fairness, in particular, are important considerations underlying the decision to exercise supplemental jurisdiction. Gibbs, 383 U.S. at 726.

Elaborating on the Supreme Court's ruling in Gibbs, the Ninth Circuit recently held that, when declining to exercise supplemental jurisdiction for a state law claim under § 1367(c)(4), district courts must apply the following two-step inquiry: first, the district court must sufficiently explain why the circumstances of the case are exceptional under § 1367(c)(4); and second, the court must show the balance of the Gibbs values provides compelling reasons for declining jurisdiction in such circumstances. Vo v. Choi, 49 F.4th 1167, 1171 (9th Cir. 2022) (quoting Arroyo v. Rojas, 19 F.4th 1202, 1212–13 (9th Cir. 2021)).

**III.**

**DISCUSSION**

In consideration of judicial economy, convenience and fairness to litigants, and comity, the Court finds Plaintiff's state law claims substantially predominate over the ADA claim and exceptional circumstances warrant declining supplemental jurisdiction over the state law claims. See 28 U.S.C. §§ 1367(c)(2), (4); Gibbs, 383 U.S. at 726.

**A.     The State Claims Substantially Predominate**

A court may dismiss state law claims when "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought," the state law claims substantially predominate over the federal claims. Rutherford v. Ara Lebanese Grill, No. 18-CV-01497-AJB-WVG, 2019 WL 1057919, at *3 (S.D. Cal. Mar. 6, 2019) (quoting Gibbs, 383 U.S. at 726–27); 28 U.S.C. §§ 1367(c)(2).

As to proof and the scope of issues raised, the Court notes the Unruh Act is generally considered the state law analog to the ADA. Both acts seek to prohibit discrimination on the basis of disability. Compare 42 U.S.C. § 12182(a) with Cal. Civ. Code § 51(b). Notably, the Unruh Act provides that a violation of the ADA constitutes a violation of § 51 of the Unruh Act. Cal. Civ. Code § 51(f). However, an Unruh Act claim may alternatively be asserted "independent of an ADA claim," where the plaintiff pleads intentional discrimination in violation

4

of the statute. Schutza v. McDonald's Corp. (McDonald's), 133 F. Supp. 3d 1241, 1247–48 (S.D. Cal. 2015) (citations omitted) (finding state law claims predominated where California accessibility standards provided independent basis for liability on state law claims, and plaintiff alleged intentional discrimination). By contrast, "a plaintiff need not show intentional discrimination in order to make out a violation of the ADA." Lentini v. Cal. Ctr. for the Arts, Escondido, 370 F.3d 837, 846 (9th Cir. 2004).

Another crucial distinction between the ADA and the state law claims is the heightened procedural and filing requirements under the Unruh Act for "high frequency litigants" of accessibility claims, like Plaintiff.[4] Under this heightened pleading standard, "[e]xcept in complaints that allege physical injury or damage to property, a complaint filed by or on behalf of a high frequency litigant" is required to: (1) identify the number of complaints alleging a construction-related accessibility claim that were filed during the last 12 months; (2) identify the reason the individual was in the geographic area of the defendant's business; (3) identify the reason why the individual desired access to the defendant's business, including the specific commercial, business, personal, social leisure, recreational (or other) purpose; (4) be a verified complaint; and (5) the plaintiff must pay a $1,000 filing fee at the time of the filing of the initial complaint, in addition to the standard filing fees. Cal. Civ. Proc. Code § 425.50; Cal. Gov't Code § 70616.5. When filing an accessibility claim in federal court, by contrast, a plaintiff is held only to the liberal pleading standard of Rule 8 of the Federal Rules of Civil Procedure, and required to pay the filing fee of $405.00. Moreover, it is even possible that an indigent *pro se* plaintiff could seek and obtain a filing fee waiver pursuant to the federal *in forma pauperis* statute, 28 U.S.C. § 1915. Thus, as Defendant aptly notes (see ECF No. 14 at 4), these heightened requirements result in a "massive difference" in terms of the issues raised in ADA versus Unruh Act/DPA litigation, in that a plaintiff asserting an Uhruh Act or DPA claim must prove he or she was a *bona fide* patron of the establishment in question to establish standing, Thurston v. Omni Hotels Mgmt.

---

[4] A "high frequency litigant" is defined as a plaintiff or attorney who has filed ten or more complaints alleging a construction-related accessibility violation, and including a claim under the Unruh Act, within the 12-month period immediately preceding the lawsuit. Cal. Civ. Proc. Code § 425.55(b)(1). Without reaching a determination on the matter, the Court notes that Plaintiff would likely qualify as a "high frequency litigant" under the Unruh Act.

1  Corp., 69 Cal. App. 5th 299 (2021) (affirming defense verdict on basis that Unruh Act plaintiff
2  failed to prove she had a bona fide intent to book room with hotel when she encountered
3  problems in accessing its website); whereas, under the ADA, motivation is irrelevant to standing,
4  Civ. Rts. Educ. & Enf't Ctr. v. Hosp. Props. Tr. (CREEC), 867 F.3d 1093, 1101–02 (9th Cir.
5  2017) (holding tester ADA plaintiffs need not intend to visit hotel until after remediation and
6  "tester standing" is viable under ADA).

7  As to the comprehensiveness of the remedy sought, only injunctive relief is available
8  under the ADA, Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. §
9  12188(a)(1)), whereas the state claims provide the same injunctive relief as the ADA, as well as
10 monetary damages.  Under the Unruh Act, a plaintiff may recover actual damages for each and
11 every offense "up to a maximum of three times the amount of actual damage but in no case less
12 than four thousand dollars…." Cal. Civ. Code § 52(a).  Under the DPA, similarly, a plaintiff may
13 recover actual damages for each violation, "up to a maximum of three times the amount of actual
14 damages but in no case less than one thousand dollars…."[5] Cal. Civ. Code § 54.3.  Furthermore,
15 "[t]he litigant need not prove she suffered actual damages to recover the independent statutory
16 damages…." Molski v. M.J. Cable, 481 F.3d 724, 731 (9th Cir. 2007) (citing Botosan v. Paul
17 McNally Realty, 216 F.3d 827, 836 (9th Cir. 2000)) (on Unruh Act claim).  Thus, even without
18 the ADA claim, Plaintiff could achieve the full remedy he seeks solely through the Unruh Act
19 claim.

20 Here, Plaintiff alleges he encountered two barriers at the Shaw Ave. Store and two
21 violations at the Ming Ave. Store; these allegations, if proven, would entitle him to an award of at
22 least $16,000 under the Unruh Act.  Courts have found state law claims to predominate over the
23 federal ADA claim where, as here, the plaintiff seeks significant damages under state law.  See,
24 e.g., Schutza v. Cuddeback (Cuddeback), 262 F. Supp. 3d 1025, 1029–30 (S.D. Cal. 2017)
25 (finding that statutory damages available under the Unruh Act substantially predominated over
26 injunctive relief available under the ADA where the plaintiff alleged nine violations that, if

---

[5] The Court notes, however, a plaintiff may not recover damages under both the Unruh Act and the Disabled Persons Act.  See Johnson v. Wayside Prop., Inc., 41 F. Supp. 3d 973, 981 (E.D. Cal. 2014) (citing Munson v. Del Taco, Inc., 46 Cal.4th 661, 675 (2009)).

proven, would entitle plaintiff to an award of $36,000); McDonald's, 133 F. Supp. 3d at 1247–48 (state law claims predominated where plaintiff sought damages and fees).

In addition, many issues arise as a result of the availability of statutory and other damages under the state law claims, which do not arise with respect to the ADA. For example, inherent in the state law claims are the issues of what damages the plaintiff is entitled to; how to calculate those damages; and determining whether the plaintiff is entitled to treble damages. Litigating the state claims would therefore require additional proof and discovery that would likely not be needed under a pure ADA claim, where the only possible relief is injunctive.

Finally, the Court notes Plaintiff additionally brings both an Unruh Act claim and a DPA claim under state law. Thus, Plaintiff's state claims outnumber his lone federal claim under the ADA, and may be deemed to predominate the lawsuit on this basis as well. Cf. Johnson v. Makinen, No. 2:09-CV-796 FCD KJM, 2009 WL 2137130, at *3 (E.D. Cal. Jul. 15, 2007) (finding Unruh Act claim did not predominate over ADA claim "where plaintiff has one state claim and one federal claim, and both are still viable").

In light of the potential for Plaintiff to seek far greater state law damages, the issues tied to damages as a remedy, and the heightened procedural, proof, and pleading standards required of a frequent litigator, like Plaintiff, to file an Unruh claim, the Court finds that Plaintiff's state law claims substantially predominate over his federal claim under the ADA. 28 U.S.C. § 1367(c)(2); Gibbs, 383 U.S. at 726–27.

In response to the order to show cause, Plaintiff argues it would be unfair, inconvenient, and judicially inefficient to litigate the federal claim and the state claims in two different courts. (ECF No. 13 at 5.) However, Plaintiff's reasoning is flawed. Simply put, Plaintiff's argument is premised on the contention that the parties would be required to litigate "on the same exact issues" (id.); but as the Court has noted, Plaintiff's Unruh Act claim will require resolution of additional and different procedural, substantive, and evidentiary issues. Thus, in light of the foregoing analysis, Plaintiff's argument is unavailing.

///

///

**B.     Exceptional Circumstances and Other Compelling Reasons**

1.     <u>Comity and Fairness to Litigants</u>

Comity may constitute a compelling circumstance to decline jurisdiction when the case presents strong reasons to have the state court interpret state law or when the plaintiff engaged in forum shopping. See <u>Arroyo</u>, 19 F.4th at 1211–14; <u>Vo</u>, 49 F.4th at 1167; 28 U.S.C. § 1367(c)(4); see also <u>Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest. (Brick Oven)</u>, 406 F. Supp. 2d 1120, 1132 (S.D. Cal. 2005); <u>Feezor v. Tesstab Operations Grp., Inc.</u>, 524 F. Supp. 2d. 1222, 1225–26 (S.D. Cal. 2007).  The Court finds such circumstances exist here.

In 2012, and again in 2015, California amended the Unruh Act to adopt heightened pleading requirements and other prerequisites to filing disability discrimination lawsuits under the Act.  <u>Cuddeback</u>, 262 F. Supp. 3d at 1031–32 (citing Cal. Code Civ. Proc. § 425.50).  California adopted these provisions in an attempt to discourage the small number of plaintiffs and law firms who file a disproportionately large number of the construction-related accessibility lawsuits in the state from filing boilerplate complaints against small businesses, "apparently seeking quick cash settlements rather than correction of the accessibility violation," as "[t]his practice unfairly taints the reputation of other innocent disabled consumers who are merely trying to go about their daily lives accessing public accommodations as they are entitled to have full and equal access under the state's Unruh Civil Rights Act … and the federal Americans with Disability Act of 1990."  Cal. Civ. Proc. Code § 425.55(a)(2).  Thus, "California has a strong interest in protecting its citizens and businesses from abusive litigation and also in preventing its own laws from being misused for unjust purposes."  <u>Brooke v. Suites LP</u>, No. 3:20-cv-01217-H-AHG, 2020 WL 6149963, at *5–6 (S.D. Cal. Oct. 19, 2020) (declining supplemental jurisdiction over the plaintiff's Unruh Act claim "because it substantially predominates over her federal claim under the ADA and exceptional circumstances favor dismissal, including the Court's interests in comity and discouraging forum-shopping").

In light of these heightened pleading requirements for high frequency litigants, a growing trend of countless other district courts in this circuit have recognized that exercising supplemental jurisdiction over a high frequency litigant's Unruh Act claims would frustrate California's policy,

as codified by statute, of subjecting such claims to stricter pleading standards and allow serial litigants to "use the federal court system as a loophole to evade California's pleading requirements." Rutherford, 2019 WL 1057919, at *4–5; Cuddeback, 262 F. Supp. 3d at 1031.[6] As one Southern District of California court commented:

> Unfortunately for California, its courts rarely get to interpret the meaning and application of [the Unruh Act] provisions because creative plaintiffs are able to evade the heightened standards by bootstrapping an Unruh Act claim to a federal ADA claim, taking advantage of the lower pleading standards that come with it. While there is nothing *per se* improper with a plaintiff's desire to proceed in federal court, there appears to be no reason to do so when the only relief available under the ADA is injunctive relief, which can also be secured in state court.

Langer v. U.S. Green Techs., Inc. (Green Techs), No. 3:20-cv-01717-BEN-BGS, 2020 WL 7353447, at *5 (S.D. Cal. Dec. 14, 2020) (quoting Schutza v. Alessio Leasing, Inc., No. 18cv2154-LAB (AGS), 2019 WL 1546950, at *3 (S.D. Cal. Apr. 8, 2019)) (internal quotations and citations omitted). Indeed, many courts have observed that, "since the decision in [Cuddleback] … [which declined to exercise supplemental jurisdiction over related state law claims in an ADA case], the tide has changed and over 931 cases have favorably cited the decision rejecting supplemental jurisdiction." Green Techs, 2020 WL 7353447, at *4 (citing Cuddleback, 262 F. Supp. 3d 1025; see also Langer v. Honey Baked Ham, Inc., No. 3:20-CV-1627-BEN-AGS, 2020 WL 6545992, at *7 (S.D. Cal. Nov. 6, 2020) (noting almost every district judge in the Southern District of California has declined to exercise supplemental jurisdiction over supplemental state law claims in similar cases alleging violations of the ADA and Unruh Act) (collecting cases).

---

[6] See also, e.g., Brooke v. Tides Hosp. LLC, No. 8:21-cv-00755-JLS-JDE, 2021 WL 2291737 (C.D. Cal. Jun. 4, 2021) (order to show cause why the court should not decline to exercise supplemental jurisdiction over plaintiff's Unruh Act claim); Marquez v. KBMS Hosp. Corp., 492 F. Supp. 3d 1058 (C.D. Cal. 2020) (following *sua sponte* order to show cause why the court should not decline to exercise supplemental jurisdiction over plaintiff's Unruh Act claim, dismissing Unruh Act claim without prejudice to refiling in state court and retaining jurisdiction over ADA claim only); Trujillo v. Hernandez, No. 1:22-cv-00643-ADA-BAM, 2023 WL 317324, at *1 (E.D. Cal. Jan. 19, 2023) (vacating findings and recommendations re: motion for default judgment and ordering plaintiff to show cause why court should not decline to exercise supplemental jurisdiction over Unruh Act claim); Gilbert v. Samra, No. 1:22-cv-00552-ADA-BAM, 2023 WL 317323, at *2 (E.D. Cal. Jan. 19, 2023) (ordering plaintiff to show cause why court should not decline to exercise supplemental jurisdiction over Unruh claim); Garcia v. Maciel, No. 21-cv-03743-JC, 2022 WL 395316 (N.D. Cal. Feb. 9, 2022) (declining supplemental jurisdiction over Unruh Act claim and declining to resolve motion to dismiss as to same).

The Ninth Circuit has also expressed "concerns about comity and fairness" by permitting plaintiffs to circumvent "California's procedural requirements." Vo, 49 F.4th at 1171. Plaintiffs who file these actions in federal court evade these limits and pursue state law damages in a manner inconsistent with the state law's requirements, as the Ninth Circuit has observed:

> As the district court recognized, the recent confluence of several California-law rules have combined to create a highly unusual systemic impact on ADA-based Unruh Act cases that clearly threatens to have a significant adverse impact on federal-state comity. Congress crafted the ADA so that the only remedy available in private suits is prospective injunctive relief, and damages are only available in suits that the Government elects to bring. *See supra* at 1205–06 & 1206 n.1. As it is entitled to do, California chose a different route—it created, in the Unruh Act, a state law cause of action that relies dispositively on the ADA's substantive rules but that expands the remedies available in a private action. Not only are "actual damages" available, but also an additional award of up to treble damages, and the total monetary award may not be less than $4,000 per occasion. *See* CAL. CIV. CODE § 52(a); *id.* § 55.56(a), (f). In response to the resulting substantial volume of claims asserted under the Unruh Act, and the concern that high-frequency litigants may be using the statute to obtain monetary relief for themselves without accompanying adjustments to locations to assure accessibility to others, California chose not to reform the underlying cause of action but instead to impose filing restrictions designed to address that concern. Because these procedural restrictions apparently have not been applied in federal court, *see supra* at 1207–08, the consequence of these various laws, taken together, was to make it very unattractive to file such Unruh Act suits in state court but very attractive to file them in federal court. Given that the Unruh Act borrows the ADA's substantive standards as the predicate for its cause of action, a federal forum is readily available simply by pairing the Unruh Act claim with a companion ADA claim for injunctive relief. *See* 28 U.S.C. § 1331. As the statistics cited by the district court demonstrate,[5] the apparent result has been a wholesale shifting of Unruh Act/ADA cases into the U.S. District Court for the Central District of California (and perhaps the other California federal courts as well).

Arroyo, 19 F.4th at 1211–12 (n.5 statistics omitted). The Ninth Circuit cautioned that "retention of supplemental jurisdiction over ADA-based Unruh Act claims threatens to substantially thwart California's carefully crafted reforms in this area and to deprive the state courts of their critical role in effectuating the policies underlying those reforms." Id. at 1213. This Court similarly finds that supplemental jurisdiction should be declined where an ADA plaintiff appears to be filing suit in federal court for the purpose of circumventing California state law. Thus, based on

the foregoing authorities, when a plaintiff asserts an Unruh Act claim in federal court with an ADA claim, this constitutes an exceptional circumstance that justifies dismissal of the Unruh Act claim.  See, e.g., id. at 1211–14; Vo, 49 F.4th at 1167.

With respect to the instant litigation, the Court acknowledges Plaintiff's ADA and state law claims arise out of the same facts and require application of similar standards, and that exercising supplemental jurisdiction would allow these claims to be heard together in federal court.  However, exercising jurisdiction over Plaintiff's Unruh Act claim would undermine the procedures established for hearing such claims in California.  See Vo, 49 F.4th at 1171 ("it would not be 'fair' to defendants and 'an affront to the comity between federal and state courts' to allow plaintiffs to evade California's procedural requirements by bringing their claims in federal court.") (citation omitted).  Furthermore, there is no question that Plaintiff would qualify as a "high frequency litigant" under the Unruh Act.  As this Court has noted in prior litigations filed by Plaintiff, Plaintiff has filed hundreds of accessibility lawsuits.[7]  Indeed, the Court is aware of at least twelve federal lawsuits that include an Unruh Act claim that Plaintiff has initiated in the Eastern District of California within the twelve months prior to initiation of the instant litigation on September 21, 2022.[8]  Plaintiff neither disputes nor addresses this point in any meaningful way

---

[7] See Gastelum v. Cent. Valley Hosp. LLC, No. 1:21-cv-01079-JLT-SAB, 2022 WL 2072839, at *1 (E.D. Cal. Jun. 9, 2022), findings and recommendations vacated on other grounds (Aug. 23, 2022) (not. of settlement filed) (noting that, of the 150+ accessibility lawsuits Plaintiff recently initiated in the state of Arizona, many were filed on Plaintiff's behalf by his then-attorney, Peter Strojnik Sr., who was disbarred by the State of Arizona in 2019).  See also Advocs. for Individuals With Disabilities LLC v. MidFirst Bank, 279 F. Supp. 3d 891, 893 (D. Ariz. 2017) (describing Strojnik's ADA litigation tactics as "extortionate" and "pervasive," which included pursuing "upwards of 160 cookie-cutter lawsuits in federal court and, from early to later 2016, more than 1,700 such suits in Arizona state court"); Gastelum v. Canyon Hosp. LLC, No. CV-17-02792-PHX-GMS, 2018 WL 2388047, at *1–2, *4, *8 (D. Ariz. May 25, 2018) (discussing Plaintiff and Strojnik's "joint enterprise" of filing multiple lawsuits against "any Phoenix area lodgings that they believe to be out of compliance with the ADA in some respect or respects," consolidating multiple "substantially similar, boilerplate complaints" and finding they all failed to establish standing).  In addition, the Court notes that, as of October 2022, Plaintiff had filed at least 55 federal accessibility cases across the federal district courts of California (18 cases in the Eastern District, 14 cases in the Central District, 14 in the Southern District, and 9 cases in the Northern District).

[8] An independent review of PACER for cases filed by Plaintiff between September 21, 2021 and September 21, 2022 (the date of filing of the instant action) revealed: (1) Gastelum v. Bed Bath & Beyond Inc., No. 2:21-cv-02274-KJM-DB (E.D. Cal. Dec. 8, 2021); (2) Gastelum v. Kohl's Dep't. Stores Inc., No. 1:21-cv-01740-JLT-BAM (E.D. Cal. Dec. 8, 2021); (3) Gastelum v. Veer Hosp. LLC, No. 1:22-cv-00112-DAD-CDB (E.D. Cal. Jan. 27, 2022); (4) Gastelum v. Easiness LP, No. 1:22-cv-00166-ADA-CDB (E.D. Cal. Feb. 8, 2022); (5) Gastelum v. Tilly's, Inc., No. 1:22-cv-00178-ADA-CDB (E.D. Cal. Feb. 11, 2022); (6) Gastelum v. Penney OpCo, LLC, 2:22-CV-00283-KJM-AC (E.D. Cal. Feb. 11, 2022); (7) Gastelum v. Tractor Supply Co., No. 1:22-cv-00209-JLT-SAB (E.D. Cal. Feb. 18, 2022); (8) Gastelum v. Petco Animal Supplies Stores, Inc., No. 1:22-cv-00792-BAM (E.D. Cal. Jun. 27, 2022); (9) Gastelum v. Five Below, Inc., No. 1:22-cv-00825-AWI-SAB (E.D. Cal. Jul. 5, 2022); (10) Gastelum v. Bed Bath &

in his response to the Court's order to show cause.

However, because California's heightened pleading standards and increased filing fees do not apply in federal court, Plaintiff can "circumvent the restrictions California has imposed on the Unruh Act and other claims alleging construction-related accessibility claims simply by relying on § 1367(a)'s grant of supplemental jurisdiction to file [his] Unruh Act claims in federal court." Williams v. Ige, No. 2:22-cv-08558-SPG-SK, 2022 WL 18278637, at *3 (C.D. Cal. Dec. 13, 2022), accord Shayler v. 1310 PCH, LLC, 51 F.4th 1015, 1018 (9th Cir. 2022). The Court notes Plaintiff appears to deny this is his intent in his response to the order to show cause, though he does not discuss or identify any non-forum shopping reasons for preferring federal court for his claims. (See ECF No. 13 at 5.) Nevertheless, as other district courts have commented under similar circumstances, "[i]t is unclear what advantage—other than avoiding state-imposed pleading requirements—Plaintiff gains by being in federal court since his sole remedy under the ADA is injunctive relief, which is also available under the Unruh Act." Cuddleback, 262 F. Supp. 3d at 1031 (finding plaintiff was engaging in forum-shopping by bringing his action in federal court and attempting to avoid California's heightened pleading requirements for disability discrimination claims); see also Hanna v. Plumer, 380 U.S. 460, 467–69 (1965) (discussing twin aims of Erie doctrine, "discouragement of forum-shopping and avoidance of inequitable administration of the laws," and providing that federal courts may take measures to discourage forum-shopping); Brick Oven, 406 F. Supp. 2d at 1131–32 (declining to exert supplemental jurisdiction over Unruh and Disabled Persons Act claims "[b]ecause a legitimate function of the federal courts is to discourage forum shopping and California courts should interpret California law"). Rather, given Plaintiff could seek the more rewarding remedies (*e.g.*, money damages) in state court as well as injunctive relief (the only relief available in federal court), filing in federal court appears to be a strategic avoidance of the heightened-pleading requirements that would otherwise need to be met in state court. Indeed, to this point, Plaintiff appears to concede he is

---

Beyond, Inc., No. 1:22-cv-01173-ADA-CDB (E.D. Cal. Sept. 14, 2022); (11) Gastelum v. Shop Q, Inc., No. 1:22-cv-01176-EPG (E.D. Cal. Sept. 14, 2022); (12) (PS) Gastelum v. Macy's Inc., No. 2:22-cv-00065-KJM-DB (E.D. Cal. Jan. 10, 2022). Incidentally, the Court also notes that, after initiating the instant lawsuit, Plaintiff has filed at least six new accessibility lawsuits in the Eastern District of California.

forum-shopping because he believes "Unruh's 'heightened' and 'special' procedures … subject [him] to unequal justice in the State Court" (ECF No. 13 at 1). Thus, the Court concludes Plaintiff filed the instant litigation in federal court solely to avoid being subject to the Unruh Act's heightened requirements for high frequency litigants.

The Court finds that allowing Plaintiff to evade California's procedural limits would contradict the California Legislature's goal of "limiting the financial burdens California's businesses may face for claims for statutory damages under the Unruh Act." See Arroyo, 19 F.4th at 1212–13. It would be unfair to allow Plaintiff to enjoy "those parts of California law that benefit him while disallowing the parts purposefully enacted to protect Defendants." Schutza v. Enniss Family Realty I LLC, No. 20-cv-0298 W (JBL), 2020 WL 3316969, at *3 (S.D. Cal. Jun. 18, 2020). Moreover, the Court notes that the Ninth Circuit has deemed the circumstances surrounding Unruh Act claims brought in federal court " 'exceptional' in any meaningful sense of the term," and has cautioned that "failing to recognize [these circumstances] as exceptional would improperly ignore the very substantial threat to federal-state comity that this overall situation presents." Arroyo, 19 F.4th at 1213; see also 28 U.S.C. § 1367(c)(4). Principles of comity and fairness therefore require the Court to decline supplemental jurisdiction so that the state court may interpret state law and Plaintiff may be precluded from engaging in forum shopping.

Based on the foregoing analysis, Plaintiff's vague and conclusory argument that no such "compelling reasons" to decline supplemental jurisdiction exist (ECF No. 13 at 4, 6) is without merit. Indeed, Plaintiff's argument is directly contradicted by the Ninth Circuit in Vo v. Choi, when it upheld the district court's order declining supplemental jurisdiction over the plaintiff's Unruh Act claim, on the basis of the "exceptional circumstances and compelling reasons" of comity and preventing forum shopping. See Vo, 49 F.4th at 1168–69.

2. Judicial Economy and Convenience

The remaining Gibbs factors—judicial economy and convenience—also provide compelling reasons for declining to exercise supplemental jurisdiction in this case. Economy and convenience do not weigh against declining jurisdiction because the court has not yet ruled on the merits of Plaintiff's ADA claim. See id. at 1171–72.

With respect to fairness to the litigants, Plaintiff argues it is not fair to require the parties to pay new filing fees in state court, and litigating in federal court is more convenient than state court because the filing systems in state court are complex and disorganized. (ECF No. 13 at 5.) However, the Court notes it will not deprive Plaintiff of any remedies by exercising its discretion to deny supplemental jurisdiction and therefore does not see any prejudice in requiring Plaintiff's state law claims be heard in state court. See Garibay v. Rodriguez, No. CV 18-9187 PA (AFMx), 2019 WL 5204294, at *6 (C.D. Cal. Aug. 27, 2019) ("[D]eclin[ing] supplemental jurisdiction does not deprive plaintiff of any remedies. Nor does it allow an ADA claim for injunctive relief to go unaddressed.") Rather, as one Central District of California court noted, "[w]hatever inefficiencies are created by the Court's decision to decline to exercise supplemental jurisdiction are problems created by plaintiff's filing of this action in federal court rather than in a state court … if plaintiff legitimately seeks to litigate this action in a single forum, plaintiff may dismiss this action and refile it in a state court in accordance with the requirements California has imposed on such actions." Id. (citation omitted). Furthermore, Defendant, by comparison, would be prejudiced by a decision to retain supplemental jurisdiction because it would effectively be denied the protections that the California Legislature expressly intended to provide California businesses under the Unruh Act, as previously discussed. Finally, by declining to exercise supplemental jurisdiction, the Court is merely "restoring the balance Congress struck when it enacted the ADA and provided a private right of action for injunctive relief and an award of attorneys' fees, but did not allow for the recovery of statutory damages." Id. Plaintiff's argument is therefore unavailing.

Next, Plaintiff argues it is inappropriate to decline supplemental jurisdiction until all four factors under § 1367, and all of the Gibbs factors are satisfied. (ECF No. 13 at 4–5.) This argument is also unavailing. Section 1367 indicates a court may decline supplemental jurisdiction when "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, *or* (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. §§ 1367(c)(1)–(4) (emphasis added). A plain reading of the statute thus reveals that

1    satisfaction of any *one* of the four factors is sufficient to decline supplemental jurisdiction.
2    Similarly, the Gibbs court identified four values to be applied to the § 1367 inquiry, but did not
3    establish a bright line rule as to how those factors were to be weighted.  See, generally, Gibbs,
4    383 U.S. 715.  Rather, as the Ninth Circuit has explained, the "*balance* of the *Gibbs* values" must
5    support the compelling reasons inquiry; this indicates a balancing approach, rather than the type
6    of test Plaintiff advocates.  See Vo, 49 F.4th at 1171 (emphasis in original).  Regardless, this
7    Court has considered all four Gibbs values and concludes that all four factors weigh in favor of
8    declining supplemental jurisdiction.

9    Plaintiff also argues the Court should follow "court precedents" and apply the same
10   rulings issued in Arroyo; Gastelum v. Parvarti Hospitality, Inc. (Parvarti Hospitality), No. 5:21-
11   cv-06235-BLF, 2022 WL 2812176 (N.D. Cal. Jul. 18, 2022); and Gastelum v. TC Heritage Inn 2
12   of Bakersfield (TC Heritage), No. 1:21-cv-01230-JLT-CDB, 2023 WL 405028 (E.D. Cal. Jan. 25,
13   2023).  (ECF No. 13 at 1–4.)

14   Plaintiff does not, however, present substantive argument to show how his cases are
15   analogous to the instant action; thus, Plaintiff's argument is unpersuasive.  See Vo, 49 F.4th at
16   1173 (the supplemental jurisdiction inquiry is case-specific).  In addition, the Court notes the two
17   district court cases Plaintiff references are not controlling.  Most importantly, however, all three
18   of the cases cited by Plaintiff are inapposite to the facts and procedural posture of the instant
19   matter.

20   In Arroyo, the Ninth Circuit found that because a motion for summary judgment was
21   already adjudicated and the court had ruled in favor of the plaintiff on the ADA claim, "[f]rom
22   the perspective of judicial economy and convenience, it makes no sense to decline jurisdiction, as
23   the district court did, over a pendent state law claim that that court has effectively already
24   decided."  Arroyo, 19 F.4th at 1214.

25   Parvarti Hospitality, too, had progressed much further into the litigation than the instant
26   matter.  In Parvarti Hospitality, at the time the court declined to dismiss Plaintiff's Unruh Act
27   claim, the action was proceeding on a motion to dismiss the operative second amended complaint.
28   See Parvarti Hosp., 2022 WL 2812176, at *1.  At this point, the court had already evaluated and

denied the motion on the merits as to Plaintiff's ADA claim; therefore, it declined to dismiss the Unruh Act claim, which was brought on the same factual allegations. Id. at * 6. Moreover, the matter of supplemental jurisdiction was not raised at that time. See id.

Finally, the Court acknowledges the court in TC Heritage squarely addressed a request to decline supplemental jurisdiction over Plaintiff's Unruh Act claim and exercised its discretion to retain supplemental jurisdiction, on the basis that judicial economy and convenience to the parties weighed in favor of retaining jurisdiction. TC Heritage, 2023 WL 405028, at *11–13. Importantly, however, at the time of the decision upon which Plaintiff relies, the action was proceeding on the first amended complaint, the court had already resolved one prior motion to dismiss on its merits, and had reached a determination after resolving the defendant's second motion to dismiss that Plaintiff adequately stated a claim under the ADA. See id. Accordingly, the court found Arroyo to be sufficiently analogous to its own procedural posture and concluded "at this time," judicial economy rendered it inappropriate to decline supplemental jurisdiction solely based on the compelling reasons prong of § 1367. Id. at *13. TC Heritage, like Arroyo and Parvarti Hospitality, is thus distinguishable from the instant matter.

Unlike the cases cited by Plaintiff, the instant litigation remains in its infancy. This matter is proceeding on the original complaint, which was only served on Defendant in November 2022 and answered by Defendant in mid-December. The initial scheduling conference has not yet been held and no discovery has commenced. Furthermore, the Court issued its order to show cause before expending any resources on the resolution of Plaintiff's claims on the merits. Accordingly, this case is more akin to Vo, in which the Ninth Circuit held that it was proper to decline supplemental jurisdiction over the Unruh Act claim at any time before the court has ruled on the merits of the ADA claim, especially "at the *outset* of the litigation." Vo, 49 F.4th at 1170–72 (emphasis in original). For these reasons, Plaintiff's argument that the Court should adopt rulings similar to those issued in Arroyo and his other litigations is unavailing.

### C. Plaintiff's Preemption Argument

Additionally, Plaintiff argues the Court should retain supplemental jurisdiction because the ADA preempts the state law procedural requirements. (See ECF No. 13 at 6–8.) More

specifically, Plaintiff argues that the Unruh Act's "high-frequency litigant" restrictions are preempted by the 28 C.F.R. § 36.103(c), which provides, "This part does not invalidate or limit the remedies, rights, and procedures of any other Federal laws, or State or local laws (including State common law) that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them." Plaintiff also argues Arroyo supports his preemption argument because the court referred to the "high-frequency litigant" restrictions in the Unruh Act as "heightened" and "special," which Plaintiff contends is equivocal to a finding that the Unruh amendments "provide for lesser and unequal protection of disabled [plaintiffs'] rights and procedures." (ECF No. 13 at 7–8.) Finally, as understood by this Court, Plaintiff appears to argue the ADA preempts the Unruh Act with respect to pleading requirements, but not with respect to recovery of monetary damages, such as the $4,000 per Unruh violation, per encounter, and the treble damages pursuant to California Civil Code § 3345(b) that Plaintiff currently seeks to recover in federal court.

Not only does Plaintiff fail to cite any authority for his reading of this regulation, but his argument misunderstands preemption, the Supreme Court's holding in Arroyo, and the California Legislature's purpose in enacting "high-frequency litigant" restrictions. See Gastelum v. 4045 Univ., LLC, No. 5:22-cv-01033-SVW-SP, 2022 WL 3574445 at *4 n.2 (C.D. Cal. Jul. 21, 2022) (rejecting preemption argument on same bases); Moreover, Plaintiff's boilerplate preemption argument has repeatedly been rejected by this Court and others. See, e.g., Gastelum v. Five Below, Inc., No. 1:22-cv-00825-AWI-SAB, 2022 WL 6224274, at *9–10 (E.D. Cal. Oct. 7, 2022) (finding Plaintiff's preemption arguments as to Unruh Act's pleading requirements, but not monetary damages, to be "at best, paradoxical."), report and recommendation adopted, 2023 WL 159577 (E.D. Cal. Jan. 11, 2023); Gastelum v. TJX Cos., Inc., No. 21-cv-06714-VKD, 2023 WL 2224432, at *3 (N.D. Cal. Feb. 24, 2023) (finding Plaintiff's preemption argument to be "neither well-developed nor supported by any authority that actually so holds."). Accordingly, Plaintiff's argument is unavailing.

///

///

17

**IV.**

**CONCLUSION AND ORDER**

For the foregoing reasons, the court concludes that Plaintiff's state law claims substantially predominate over the federal ADA claim, and this case presents exceptional circumstances and compelling reasons to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act and Disabled Persons Act claims. See 28 U.S.C. §§ 1367(c)(2), (4).

Accordingly, IT IS HEREBY ORDERED that:

1. The Court's February 1, 2023 order to show cause (ECF No. 11) is DISCHARGED;
2. The Court DECLINES to exert supplemental jurisdiction over Plaintiff's state law claims;
3. Plaintiff's state law claims under California's Unruh Act and Disabled Persons Act are DISMISSED, without prejudice as to any action filed in state court, and this matter shall proceed on Plaintiff's claim under the ADA only; and
4. The parties SHALL FILE their joint scheduling conference report **no later than May 1, 2023**, after which time the Court will issue a Scheduling Order.

IT IS SO ORDERED.

Dated:   **April 14, 2023**

UNITED STATES MAGISTRATE JUDGE